IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CR3089 |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| STEVEN J. GRAY, | ) | |
| | ) | |
| Defendant. | ) | |

The defendant has moved to suppress all evidence obtained as a result of the warrantless search of his vehicle on January 26, 2006.  Filing No. 19.  The defendant claims the  vehicle search was unlawful under Arizona v. Gant, 129 S.Ct. 1710, 1712 (2009), issued by the Court on April 21, 2009.  The government argues the motion to suppress must be denied under the good-faith exception to the exclusionary rule set forth in U.S. v. Leon, 468 U.S. 897 (1984).  For the reasons explained below, the defendant's motion to suppress will be denied.


FACTUAL FINDINGS


The parties have submitted this motion to suppress on stipulated facts. Specifically, the parties have submitted the police reports prepared by Officers Pavelka and Hudec of the Lincoln Police Department ("LPD"), the officers who searched the defendant's vehicle, as facts to be considered as true for the purpose of this motion.  See, filing nos. 27, 28, 29 & 31.  The relevant evidence for the purpose of this motion is as follows.


On January 26, 2006, Officer Hudec observed a 1989 Chevy Caprice traveling eastbound on "O" Street in Lincoln, Nebraska near 56th Street with a non-visible rear license plate.  A traffic stop was initiated.

Officer Hudec contacted the defendant, who was driving the vehicle, and asked for his driver's license. The officer also requested and received identification from the vehicle passenger, Christopher Gray. Officer Hudec ran the defendant's license, and the passenger's identification. Dispatch reported the defendant's driver's license was suspended for insurance cancellation on January 24, 2006.

In response to Officer Hudec's request, Officer Pavelka arrived at the scene to provide assistance. The defendant was arrested for driving on a suspended license and was placed in custody. Officers Hudec and Pavelka then searched the defendant's vehicle incident to his arrest. The officers found a small bag of a white substance, field tested and later confirmed to be cocaine, under the front driver's seat.

## LEGAL ANALYSIS

Under the prevailing circuit court interpretation of New York v. Belton, 453 U.S. 454 (1981), prior to the issuance of the Court's opinion in Arizona v. Gant, 129 S.Ct. 1710 (2009), the search of defendant Gray's vehicle was deemed lawful under the Fourth Amendment as a reasonable search incident to arrest. See, U.S. v. Hrasky, 453 F.3d 1099, 1100 (8th Cir. 2006). In Hrasky, an officer stopped a vehicle because he recognized the driver and believed the driver's operator's license had been suspended. The driver, defendant Hrasky, was removed from the vehicle, handcuffed and placed in the officer's vehicle, and after an hour of questioning on matters unrelated to driving on a suspended license, the officer arrested the defendant for driving without a license and searched his vehicle incident to arrest. The district court suppressed the evidence, finding the search was unlawful under the Fourth Amendment. On interlocutory appeal, the Eighth Circuit reversed the district court, explaining:

> We are required once again to apply the "bright-line" rule of New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981),

-2-

which provides that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Id. at 460, 101 S.Ct. 2860.

. . . .

. . . Thus, in the case of a full custodial arrest of an "occupant" or "recent occupant" of a vehicle, id. at 460, 94 S.Ct. 467, the police may search the passenger compartment of the vehicle as "a contemporaneous incident" of that arrest. Such a search to ensure safety and to preserve evidence is "reasonable" under the Fourth Amendment. Thornton v. United States, 541 U.S. 615, 623, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004). "The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which Belton enunciated." Id. at 622-23, 124 S.Ct. 2127.

Hrasky, 453 F.3d at 1101.

Gant effectively overruled Hrasky, and it's bright-line interpretation of Belton. In Gant, officers stopped a vehicle because the defendant was driving on a suspended license. After the defendant was handcuffed and placed in a patrol vehicle, defendant's vehicle was searched incident to arrest. Gant suppressed the evidence found during the vehicle search, explaining that the broad scope of vehicle searches permitted under the prevailing circuit court interpretation of Belton was incorrect. The Court reasoned that officer safety concerns are sufficiently addressed if officers are permitted to conduct a vehicle search only when an arrestee is actually within reaching distance of the vehicle. Gant, 129 S.Ct. at 1721. Gant further held that a rule allowing police officers to search the passenger compartment and every purse, briefcase, or other container within that space whenever an individual is caught committing a traffic offense, even when there is no reason to believe evidence of the offense may be found in the vehicle, creates a serious and recurring threat which

-3-

implicates "the central concern underlying the Fourth Amendment--the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." Gant, 129 S.Ct. at 1720. Accordingly, Gant held:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

Gant, 129 S.Ct. at 1723-24.

Defendant Gray's vehicle was searched on January 26, 2006. As of that date, the search of the vehicle by officers Hudec and Pavelka did not violate the Fourth Amendment under the Eighth Circuit's interpretation of a lawful search incident to arrest. Hrasky, 453 F.3d at 1101. However, the search of Gray's vehicle was not lawful under Gant's narrower interpretation of Belton. Specifically, there was no reasonable basis to believe a search of Gray's vehicle could uncover evidence relevant to his arrest for driving on a suspended license, and once Gray was handcuffed and in custody, the vehicle search could no longer be justified based on officer safety concerns.

The government argues Officers Hudec and Pavelka conducted the vehicle search in accordance with the then-existing and published law of the Eighth Circuit, reasonably believed their search of the vehicle was lawful, and the evidence found during the search should not be excluded under the good-faith exception set forth in U.S. v. Leon, 468 U.S. 897 (1984). Leon held the Fourth Amendment exclusionary rule does not apply to evidence obtained by police who acted in objectively

-4-

reasonable reliance on a search warrant issued by a detached and neutral magistrate judge.  Leon, 468 U.S. at 909.

The Ninth, Seventh, and Sixth Circuits have refused to apply the Leon's good-faith exception to warrantless searches, holding instead that Leon applies only to searches conducted pursuant to a warrant issued by the court that was later invalidated for lack of probable cause.  U.S. v. Real Property Located at 15324 County Highway E., 332 F.3d 1070, 1076 (7th Cir. 2003) ("We decline to extend further the applicability of the good-faith exception to evidence seized during law enforcement searches conducted in naked reliance upon subsequently overruled case law. . . ."); U.S. v. Whiting 781 F.2d 692, 698 -699 (9th Cir. 1986) (holding the Leon exception did not apply to a warrantless border search because Leon "is clearly limited to warrants invalidated for lack of probable cause and does not create [a] broad "good-faith" exception. . . ."); U.S. v. Morgan, 743 F.2d 1158, 1165 (6th Cir.1984) (refusing to extend Leon to a warrantless search which the government argued fell under the "exigent circumstances" exception).

As applicable to the facts currently before this court, the Ninth Circuit has refused to apply the good-faith exception to warrantless searches conducted incident to arrest which were conducted before April 19, 2009, were lawful under pre-Gant case law, but were unlawful under Gant.  U.S. v. Gonzalez, 578 F.3d 1130, 1132 (9th Cir. 2009).  The government in Gonzalez argued the exclusionary rule should not be applied to a search that was lawful under the then-prevailing case law because the officers' conduct was neither wrongful nor culpable when performed, and excluding the evidence would not serve to deter such conduct in the future.  Gonzalez rejected this argument, explaining:

> Neither the Supreme Court nor our court, however, has applied the good-faith exception to the scenario we face:  a search conducted under a then-prevailing interpretation of a Supreme Court ruling, but

rendered unconstitutional by a subsequent Supreme Court ruling
announced while the defendant's conviction was on direct review.

. . . .

. . . The Court has held that "a decision of this Court construing
the Fourth Amendment is to be applied retroactively to all convictions
that were not yet final at the time the decision was rendered." United
States v. Johnson, 457 U.S. 537, 562, 102 S.Ct. 2579, 73 L.Ed.2d 202
(1982); see Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93
L.Ed.2d 649 (1987) (finding that even decisions constituting a "clear
break" with past precedent have retroactive application). This precedent
requires us to apply Gant to the current case without the overlay of an
application of the good-faith exception. To hold that Gant may not be
fully applied here, as the Government urges, would conflict with the
Court's retroactivity precedents.

Gonzalez, 578 F.3d at 1132. See also, U.S. v. Buford, 623 F.Supp.2d 923, 925 (M.D.
Tenn. 2009)(holding the "good-faith" exception could not operate to permit
admission of a gun and statement obtained in violation of Gant; applying Leon to
such circumstances would undermine the retroactivity doctrine set forth in Griffith
v. Kentucky, 479 U.S. 314, 328 (1987)); U.S. v. Peoples, 2009 WL 3586564, 6 (W.D.
Mich. Oct. 29, 2009) (excluding evidence obtained during a vehicle search
considered lawful under pre-Gant law because "[e]xpanding the good-faith doctrine
to permit reliance on case law would . . . permit use of illegally obtained evidence
based on the good faith of the officer alone, unchecked by the judgment of either the
legislature . . . or the judiciary. . . .").

In contrast to the Ninth, Seventh, and Sixth Circuits, the Fifth and Tenth
Circuits have held Leon's good-faith exception applies to warrantless searches
considered lawful under the case law existing when the search was performed, but
rendered unconstitutional by a later court ruling. U.S. v. McCane, 573 F.3d 1037
(10th Cir. 2009) (discussed. supra.); U.S. v. Jackson, 825 F.2d 853, 866 (5th Cir.
1987) ("[T]he exclusionary rule should not be applied to searches which relied on

Fifth Circuit law prior to the change of that law on the date of the delivery of this opinion" because the deterrence rationale of the exclusionary rule is not advanced when agents and officers act in good-faith reliance on the court's prior precedent.). See also, U.S. v. Fletcher, 91 F.3d 48, 51-52 (8th Cir. 1996) (holding the Leon good-faith exception applied to the search of luggage conducted pursuant to a warrant, even though the luggage was detained in violation of the Fourth Amendment, where the detention "was close enough to the line of validity" that officers were entitled to believe reasonable suspicion existed to justify the detention and the warrant's validity.)

In direct conflict with the Ninth Circuit's holding in Gonzalez, the Tenth Circuit, in U.S. v. McCane, 573 F.3d 1037 (10th Cir .2009), held the good-faith exception is applicable to a search conducted incident to arrest and in accordance with the settled case law of the Tenth Circuit at the time, which was later rendered unconstitutional by Gant.  U.S. v. McCane, 573 F.3d 1037, 1044 (10th Cir. 2009). McCane extensively analyzed Supreme Court decisions applying the Leon good-faith exception, specifically:  Illinois v. Krull, 480 U.S. 340, 349-53 (1987), which extended the Leon good-faith exception to a warrantless search conducted pursuant to a statute that was later declared unconstitutional; Arizona v. Evans, 514 U.S. 1, 14-16 (1995), which held the good-faith exception applied to an unlawful arrest conducted in reliance on erroneous warrant information in the court's database; and Herring v. U.S., 129 S.Ct. 695 (2009), which applied the Leon good-faith exception to a search incident to arrest where the arrest was illegal because the  warrant had been recalled but was still in the law enforcement computer database due to negligent record-keeping.  McCane noted the Court consistently focuses on the officers' good faith and culpability for the unlawful search when deciding if the exclusionary rule should be applied.  From its review of Supreme Court opinions, McCane concluded:

> Two inseparable principles have emerged from the Supreme Court cases and each builds upon the underlying purpose of the exclusionary rule:

> deterrence.  First, the exclusionary rule seeks to deter objectively unreasonable police conduct, i.e., conduct which an officer knows or should know violates the Fourth Amendment.  See, e.g., Herring, 129 S.Ct. at 701-04; Krull, 480 U.S. at 348-49, 107 S.Ct. 1160.  Second, the purpose of the exclusionary rule is to deter misconduct by law enforcement officers, not other entities, and even if it was appropriate to consider the deterrent effect of the exclusionary rule on other institutions, there would be no significant deterrent effect in excluding evidence based upon the mistakes of those uninvolved in or attenuated from law enforcement.

McCane, 573 F.3d at 1044.

Disagreeing with the reasoning in Gonzalez, McCane noted the retroactivity rule of Griffith v. Kentucky, 479 U.S. 314, 322-23 (1987), and the Leon good-faith exception are separate legal principles, each deserving of consideration when deciding if whether to suppress evidence under the exclusionary rule.  McCane concluded applying the good-faith exception to a pre-Gant search does not undermine the retroactivity rule.  McCane conceded Gant must be retroactively applied, but noted this concession need not mean suppression is warranted for a violation of Gant when officers conducting the search incident to arrest did so in good-faith reliance on the circuit law existing at the time of the search.

McCane held that excluding evidence because the officers relied on erroneous decisions of the circuit court would serve no deterrent purpose; the court's decisions, not the officers' actions, were wrong.  McCane therefore refused to apply the exclusionary rule to evidence obtained by law enforcement officers during a vehicle search performed in objectively reasonable reliance upon pre-Gant case law.  McCane, 573 F.3d at 1045.  See also, U.S. v. Lee  2009 WL 3762404, 2 (W.D. Mo. Nov. 10, 2009) ("[T]he good faith of officers relying on pre-Gant precedent supports a search otherwise indefensible under Gant"); U.S. v. Lopez, 2009 WL 2840490, 9 (E.D. Ky. Sept. 1, 2009) ("Where a lack of deterrence is likely to result from

excluding the evidence from searches done in good-faith reliance upon settled circuit precedent, the good-faith exception may be asserted."); U.S. v. Owens  2009 WL 2584570, 3 (N.D. Fla. Aug. 20, 2009) ("[A] police officer who performs an automobile search subsequent to arrest in reasonable reliance upon the settled case law of the United States Court of Appeals, even though the search is later invalidated by a Supreme Court decision, has not engaged in misconduct."); U.S. v. Allison, 637 F. Supp. 2d 657 (S.D. Iowa July 24, 2009) (holding a law enforcement officer's objective, good-faith reliance on doctrine derived from case law precludes application of the exclusionary rule); U.S. v. Grote, 2009 WL 2068023, 3 (E.D. Wash. July 15, 2009) (holding the retroactivity doctrine and the good-faith exception are of equal importance; "Future police misconduct is not deterred when, as here, the officer did not engage in any misconduct and did not make a mistake of fact or law, but acted in objective good faith on the search incident to arrest law as it existed at the time, and had existed for many years.").

The Eighth Circuit has mentioned, but has not addressed whether Leon applies to pre-Gant searches conducted incident to arrest and in compliance with pre-Gant law.  See Hrasky, 567 F.3d at 369 (8th Cir. 2009) (suppressing evidence and vacating the district court's judgment, while "[e]xpressing no view on whether good-faith reliance on Belton would [have justified] an exception to the exclusionary rule" had the argument been raised).  Having reviewed the cases cited by the parties, as well as decisions of other courts grappling with the question, this court finds the Leon good-faith exception to the exclusionary rule applies to the facts of this case.

The exclusionary rule is not an individual right, but rather "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effects." Leon, 468 U.S. at 906.  Exclusion of evidence is not a necessary consequence of a Fourth Amendment violation.  Herring, 129 S.Ct. at 700.  Rather, the benefit of applying the exclusionary rule must be weighed against the substantial social cost of letting guilty and possibly dangerous defendants go free.  Id.  The

exclusionary rule's "costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application." Id.  "[E]vidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Herring, 129 S.Ct. at 701.

On January 26, 2006, Officers Hudec and Pavelka acted in accordance with the "bright-line" rule of Belton as interpreted by the Eighth Circuit at that time.  They were not only entitled, but from their perspective and the perspective of all similarly situated officers, they correctly looked to and relied upon Supreme Court and Eighth Circuit decisions when determining the lawful parameters of the Fourth Amendment of the U.S. Constitution.  Based on the knowledge available to them on January 26, 2006, Officers Hudec and Pavelka did nothing wrong.  There is no deterrent effect to be gained by applying the exclusionary rule under these circumstances.  The defendant's motion to suppress must be denied.

Accordingly,

IT IS ORDERED that:

1)      Defendant's motion to suppress, (filing no. 19), is denied.

2)      Trial of this case is set to commence before the Honorable Warren K. Urbom at 9:00 a.m. on January 4, 2010 or as soon thereafter as the case may be called, for a duration of five (5) trial days, in Courtroom 4, United States Courthouse, Lincoln, Nebraska.  Jury selection will be held at commencement of trial.

Dated this 7th Day of December, 2009.

BY THE COURT:

*Richard G. Kopf*
United States District Judge

-10-